## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| WESTLAKE PROPERTY HOLDINGS, LLC, | : | Case No. 19-11756 (KBO) |
| | : | |
| Debtor. | : | |
| | : | |
| In re: | : | Chapter 7 |
| | : | |
| PIPELINE – WESTLAKE HOSPITAL, | : | Case No. 19-11757 (KBO) |
| LLC d/b/a DBA WESTLAKE HOSPITAL, | : | |
| | : | |
| Debtor. | : | |
| | : | |

### DEBTORS' MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING THE TRUSTEE TO CONTINUE OPERATING THE DEBTORS' BUSINESSES PURSUANT TO 11 U.S.C. § 721 THROUGH AND INCLUDING AUGUST 13, 2019, WITHOUT PREJUDICE TO SUCH FURTHER EXTENSION AS MAY BE REQUESTED BY THE CHAPTER 7 TRUSTEE, (II) AUTHORIZING THE PAYMENT OF CERTAIN PREPETITION EMPLOYEE CLAIMS, (III) AUTHORIZING THE SETOFF OF CERTAIN PREPETITION AND POSTPETITION CLAIMS, AND (IV) SCHEDULING A FINAL HEARING TO CONSIDER AN EXTENSION OF THE INTERIM OPERATING PERIOD

Westlake Property Holdings, LLC ("Westlake Propco") and Pipeline – Westlake Hospital, LLC d/b/a Westlake Hospital ("Westlake Opco," and together with Westlake Propco, the "Debtors"), hereby move this Court for an Order (i) authorizing the Chapter 7 trustee (the "Trustee" or the "Chapter 7 Trustee") to continue the operation of the Debtors' businesses pursuant to 11 U.S.C. § 721 from the Petition Date through and including August 13, 2019 (the "Interim Operating Period"), subject to further extensions, as may be requested by the Trustee, (ii) authorizing the payment of certain prepetition employee claims, (iii) authorizing the Chapter 7 Trustee and certain related parties to setoff of prepetition and postpetition claims; and (iv) scheduling a final hearing as to the relief sought herein and to authorize an extension of the

Interim Operating Period, if requested by the Chapter 7 Trustee (the "Motion to Operate"); and in support hereof the Debtors submit the declaration of Jim Edwards, Chief Executive Officer of SRC Hospital Investments II, LLC, in support of the Motion to Operate (the "Edwards Declaration"), a copy of which is filed contemporaneously herewith and incorporated herein, and the Debtors further state as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this Motion to Operate pursuant to 28 U.S.C. §§ 157 and 1334.

2.      Venue of these proceedings is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The statutory bases for the relief requested herein are 11 U.S.C. §§ 105, 363, 364, 507(a)(4) and 721.

## BACKGROUND

3.      The Debtors' businesses both relate to Westlake Hospital, a healthcare facility located in Melrose Park, Illinois (the "Hospital").  Specifically, Westlake Propco is the owner of the real property and equipment for the Hospital, and Westlake Opco is the operating company.  Westlake Propco and Westlake Opco are both Delaware limited liability companies.

4.      The Hospital is a 230 bed facility that, among other things, provides a variety of medical services, such as emergency services, behavioral health, cardiac care, imaging and radiology, pulmonology, critical care, surgery, and obstetrics/gynecology.

5.      On December 31, 2018, SRC Hospital Investments II, LLC ("SRC") entered into an agreement to purchase the Hospital and two other hospitals in the greater Chicago metropolitan area, Louis A. Weiss Memorial Hospital ("Weiss Hospital") and West Suburban Medical Center ("West Suburban Hospital").  The transaction closed on January 28, 2019.  An

organizational chart for SRC, a Delaware limited liability company and the parent company of the Debtors and the related entities pertaining to Weiss Hospital and West Suburban Hospital is attached to the Edwards Declaration as **Exhibit A**.  In connection with the sale, VHS of Illinois, Inc., received a security interest in Westlake Propco's real estate and equipment.  Notably, the seller did not and does not have a security interest in the Debtors' accounts receivable or bank accounts, both of which are unencumbered by any security interest.

6.    Prior to the purchase of the three hospitals, SRC had evaluated the financials of the Hospital's income and expenses based upon the twelve-month period ending June 2018.  As a general proposition, the financial state of hospitals are in significant disarray that continues to negatively affect the economic feasibility of both large and small hospitals.  This Court can take judicial notice of the trend from the recent bankruptcy filings within this Court, by debtors such as In re Hospital Acquisition, LLC, et al. (Case No 19-10998-BLS) and In re Center City Healthcare, LLC, et al. (Case No. 19-11466-KG).  In this case, The Affordable Care Act and Illinois' introduction of Medicaid managed care and advances in medicine have changed how and where healthcare is provided.  These forces have also changed the economics and incentivized keeping patients out of hospitals.  In the particular case of Westlake Hospital, its finances were dealt a second and third blow by recent changes at the state and local levels. In 2018, the Illinois state legislature made changes to the Illinois Health Assessment Payments & Charity Care Tax Credit Program (the "Hospital Assessment Program") and as a result, Westlake lost approximately $4 million in annual state funding.  To make matters worse, in December 2018, the Village of Melrose Park (the "Village") voted unanimously in a special meeting to withdraw $500,000 of support for the Hospital's redevelopment plan.

7.      During the twelve-month period ending June 2018, the three hospitals had lost a total of approximately $12 million.  The majority of those losses came from Westlake Hospital. By the end of the year, that loss had increased to approximately $31 million across all three hospitals, with the majority of that loss coming from Westlake.

8.      By February 2019, the Hospital's financials turned from bad to worse.  In February 2019, less than half of the Hospital's beds were occupied, and the Hospital was losing more than $1 million a month.  Meanwhile, the staffing at the hospital suffered significant attrition, to the point where the Hospital no longer felt comfortable that it could continue to provide the level of care necessary for patient safety.  In addition to the issue of ensuring safe levels of care, the continued losses by Westlake also imperiled the survival of Weiss Hospital and West Suburban Hospital.

**A.      Request to Discontinue Services and Subsequent Litigation**

9.      On February 21, 2019, the Hospital filed a discontinuation certificate of exemption application (the "Discontinuation Application") which sought the approval of the Illinois Health Facilities and Services Review Board (the "Illinois Board") to permit the closing of the Hospital. Within a few days of the submission of the Discontinuation Application, the Board deemed it complete and scheduled it for the Illinois Board's April 30, 2019 meeting.

10.     On March 7, 2019, while the Discontinuation Application was pending for a hearing, the Village filed a Complaint in the Circuit Court of Cook County, Illinois (Case No. 19-CH 03041) against Westlake Opco, SRC, and other parties asserting a variety of claims based on allegations of fraud arising from Illinois Health Facilities and Services Review Board approval of Westlake Opco's approval of a certification submitted in connection with the sale and transfer of the Hospital.

11.     Between February and April 2019, approximately 45 staff members resigned from their positions at the Hospital.  As a result, the Hospital was required to rely upon temporary staffing, rather than the Hospital's own staff.  Meanwhile, the Hospital continued to lose more money each month.  In April 2019, the Hospital lost approximately $2.3 million, as less than thirty percent (30%) of the Hospital's beds were filled.

12.     On the morning of April 9, 2019, the Hospital provided a notice to its employees pursuant to the Workers Adjustment and Retraining Notification Act of 1988 (the WARN Act).  Pursuant to the terms of the WARN Act, such notice is effective through August 21, 2019.

13.     On April 9, 2019, the Cook County Circuit Court (in Case No. 19-CH 03041) entered an Order temporarily enjoining the Hospital from discontinuing any medical service offered by Hospital on April 9, 2019, or modifying the scope of medical service that were offered by Westlake Hospital on April 9, 2019, until such time as Defendants receive approval to do so from the Illinois Board.  The Illinois Appellate Court promptly reversed that order, and the Village's petition for leave to appeal the Illinois Appellate Court's decision is currently pending before the Illinois Supreme Court.

14.     On April 18, 2019, the Appellate Court of Illinois, First District, concluded that the circuit court erred by entering a temporary restraining order where the plaintiff, the Village, lacked standing and promptly reversed that order and remanded to the Circuit Court for further proceedings.  The Village's petition for leave to appeal the Illinois Appellate Court's decision is currently pending before the Illinois Supreme Court.

15.     On April 30, 2019, the Illinois Board conducted its hearing to consider the Discontinuation Application, considered the application on its merits, and unanimously approved the Discontinuation Application.

16.    On May 2, 2019, the Village filed a second lawsuit to appeal the Illinois Board's decision in the Circuit Court of Cook County, Illinois County Department against Westlake Opco, SRC, and the Illinois Board (Case No. 19-CH-05553), by and through which it again sought injunctive relief to prevent the Hospital from closing.  This action was subsequently joined by the Illinois State Attorney of Cook County.  On May 3, 2019, the Circuit Court of Cook County entered a temporary restraining order that precluded the Hospital from closing pending a further hearing on May 7, 2019.  On May 7, 2019, notwithstanding the Illinois Board's unanimous approval of the Discontinuation Application, the Circuit Court entered an opinion and order that, among other things, precluded the defendants from discontinuing any medical service offered by Westlake Hospital on April 30, 2019 or modifying the scope of those services, or creating conditions that would change the status quo, including failing to maintain facilities staffing or supply levels. Westlake Opco and SRC timely filed their Notice of Interlocutory Appeal one day later on May 8, 2019, as subsequently amended, which remains pending in the Appellate Court of Illinois, First District at Case No. 1-19-0989.

17.    Meanwhile, the financial losses at Westlake continued to become more significant, and the prospect of remaining open grew more dire.  In May 2019, the Hospital lost approximately $2.5 million.  In July 2019, the Hospital had less than 20% of its beds occupied at any given time, and the Debtors anticipate that the Hospital may have lost as much as almost $2.7 million during the month of July.

18.    As of August 1, 2019, the Hospital had just forty (40) patients, fourteen of whom were seeking behavioral health services, with the remaining patients were seeking medical or

surgical services.  All of the patients could be safely transferred to another facility, including any of the three medical facilities within four miles of the Hospital.[1]

19.    As a matter of economics, the Hospital was nearly empty with a staff that could not be downsized due to the injunctive order of the state court.  Further, the Hospital had attempted to find a purchaser who would buy the Hospital as a going-concern.  The Debtors were contacted by a number of parties who said that they were interested in potentially acquiring the Hospital, however on August 1, 2019, the Debtors were informed by the last of the interested parties that he could not pursue the transaction because of a lack of financing.

20.    Accordingly, the Debtors had no choice but to seek Chapter 7 bankruptcy relief. Absent such relief, the Debtors would be required to stay open, but financially unable to pay their obligations to their creditors, including their employees.   The Hospital believed that, under such conditions, it would only be a matter of time until patient safety was compromised.

**B.    The Debtors' Operations and Employees**

21.    As of August 2, 2019, the Debtors employed approximately 550 employees (the "Employees"),[2] not including contracted labor who provide services in shifts.  These employees include administrative staff, medical records and health information management, security, transportation services, plant operation and maintenance workers, physical and operational therapists, respiratory therapists, behavioral and psychiatric service providers, pharmacists, laboratory technicians, radiology and electrocardiology technicians and of course, the nursing staff.

---

[1]    These three medical facilities are (i), Loyola University Medical Center, a quaternary care facility with 547 licensed beds, and which with a Level I trauma center, located in Maywood, IL; (ii) Gottlieb Memorial Hospital, a 254-licensed bed acute care hospital with a Level II trauma center located in Melrose Park, IL; and (iii) West Suburban Medical Center, a full-service, 234-bed hospital in Oak Park, IL.

[2]    All of the Employees are employed by Westlake Hospital.  Further, some of the Employees are also employees shared by the Hospital with either West Suburban Hospital or Weiss Memorial Hospital, and those Employees who work for multiple entities are paid either in whole or in part by the Hospital, or by the other hospital for which the Employee works.

22.     The Hospital's nurses can best be fit into one of the following categories:  (i) staff nurses, who are full-time employees of the Hospital, and who are familiar with the Hospital, its medical staff, its procedures, and its electronic medical records system, (ii) per diem nurses, who have no right or obligation to work for the Hospital, but who are included as employees and may do shift work for the Hospital at the parties' mutual convenience and need, and (iii) contracted agency staff who are employed on a shift-by-shift basis through an outside agency.  As a general matter, because of their lack of familiarity with the Hospital and its practices and procedure, contracted agency staff require higher level of supervision than either the staff nurses or the per diem nurses, particularly because the Hospital does not necessarily know the contracted agency staff nurses' level of competency, particularly with respect to those services for which they may be placed for a particular shift.  Unfortunately, based upon the attrition of staff nurses and the inability of the Hospital to attract new, qualified nurses to take their place, the Hospital is now staffed with a significant number of contract nurses.

23.     As noted above, on the morning of April 9, 2019, the Hospital issued WARN notices to each of its employees.  That notice remains effective through August 21, 2019.

24.     The Employees were last paid on August 2, 2019.  The current pay period for the Employees runs from July 28 through August 10, 2019, which is due to be paid on August 16, 2019.[3]  Accordingly, as of the Petition Date, the Debtors are obligated to remit payment on account of nine (9) days of prepetition wages and related expenses, including payroll taxes, and

---

[3]     Such amounts would need to be funded through Automatic Data Processing (ADP) by August 13, 2019, in order to timely remit payment to the Employees.

withholding contributions (the "Prepetition Employee Obligations"),[4] totaling approximately $731,250 on August 10, 2019.

### C.    Operations of the Hospital and Intercompany Obligations

25.    West Suburban Hospital, Weiss Hospital, and Westlake Hospital share certain costs and obligations, including obligations to doctors and staff who serve at two or more of the hospitals.  As a matter of ordinary course of business of the three hospitals, West Suburban Hospital would receive services provided by the employees Westlake Hospital, and the hospitals would maintain records of obligations among themselves.

26.    Prior to the Petition Date, West Suburban Hospital was obligated to Westlake Opco in the amount of approximately $850,000 for obligations incurred in the ordinary course of the parties, including among other things, shared personnel.  The obligations from West Suburban Hospital are not yet due to be paid, and remain subject to certain offsets among the parties in the ordinary course of business.

27.    The Debtors do not believe that any money was owed by Weiss Hospital to the Debtors, or that the Debtors had any financial obligation to West Suburban Hospital[5] although that remains subject to change based upon any money that may have been received by West Suburban Hospital immediately prior to the Petition Date on account of services rendered by Westlake Hospital.

---

[4]    The Debtors are not, by the Motion to Operate (filed contemporaneously herewith), seeking to authorize the payment of paid time off, or other benefits owed to Employees.  The failure to include such amounts is without prejudice to the Chapter 7 Trustee's right to subsequently seek such relief.

[5]    As of the Petition Date, the Debtors owe Weiss Hospital approximately $6.1 million.

28.     Notwithstanding Westlake Hospital's financial distress, the Hospital has insurance coverage through January 25, 2020,[6] including coverage for Professional and General Liability, Workers' Compensation, Automobile, and Property.

## RELIEF SOUGHT

29.     As a practical matter, the relief sought herein are all related and all necessary to ensure the safety of the patients that are currently in the Hospital.  Absent such relief, the Hospital would need to cease immediately, leaving the patients with no one to provide medical care to them, and no way to get to a facility to provide care.  Further, absent the relief herein, the drugs and other hazardous materials in the Hospital and the medical records located in the Hospital would not be immediately secured.

30.     Paramount to this process is the continuation of the Hospital Employees.  The Debtors anticipate that any delay in payment to the Employees will result in a widespread resignation of Employees, thereby putting the safety of the patients at risk.  By the Motion, the Debtors seek to provide the Chapter 7 Trustee with authority to pay the prepetition salaries and withholding amounts, plus attendant payroll taxes, owed to Employees for the nine (9) days immediate prior to the Petition Date.

31.     By and through this Motion, the Debtors are seeking to provide the Chapter 7 Trustee with authority to operate the Hospital for seven (7) days for the purpose of either (i) familiarizing himself with the Debtors and their operations and determining, in his business judgment, to move forward with a process for the liquidation of the Debtors' operations on a going-basis, or (ii) winding down the Hospital's operations by safely and securely transferring

---

[6]     Although the policies are in place through January 2020, such policies remain subject to payment for insurance premium financing.

the Hospital's current patients to another appropriate facility, securing and disposing of medicine and hazardous materials at the Hospital, and securing and transferring patients' medical records.

32.     Further, the Debtors are seeking to authorize, but not direct, that the Chapter 7 Trustee pay Employees' prepetition salaries and related payroll taxes and deductions, up to the statutory limit set forth in Section 507(a)(4).

33.     The Debtors are also seeking to authorize the Chapter 7 Trustee to accept and receive up to $1,936,884.00 from West Suburban Hospital, for the payment of the continued operation of the Hospital, including payment of the Prepetition Employee Obligations.  This transfer from  West Suburban Hospital would reduce the amount owed – but not yet due - by West Suburban Hospital to the Debtors, without prejudice to Chapter 7 Trustee on the one hand or West Suburban Hospital, Weiss Hospital or SRC on the other hand, to assert further prepetition or postpetition claims against each other.

34.     Finally, the Debtors seek an order scheduling a hearing to consider the relief herein on a final basis, and to consider extending the time for the Chapter 7 Trustee to continue operating the Debtors' business (if he chooses in his business judgment to do so), and setting an objection deadline for opposition such relief, if any.

**A.**      **Authorization to Continue the Limited Operation of the Debtors' Businesses Pursuant to Section 363 and 721 of the Bankruptcy Code**

35.     Section 721 of the Bankruptcy Code provides as follows:

> The court may authorize the trustee to operate the business of the debtor for a limited period, if such operation is in the best interest of the estate and consistent with the orderly liquidation of the estate.

11 U.S.C. § 721.

36.     Further, Subsection 363(c)(1) provides in pertinent part that:

> [i]f the business of the debtor is authorized to be operated under section 721 . . . of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).

37.    First and foremost, absent granting the relief herein, the Chapter 7 Trustee would not have the authority to take Hospital would have to shut down immediately, effectively stranding the Hospital's current patients, without any transportation another healthcare facility, and immediately displacing more than five hundred employees with no notice.

38.    By this Motion to Operate, the Debtors seek to provide the Chapter 7 Trustee with a short runway to familiarize himself with the Hospital and determine whether or not to seek to operate the Hospital beyond the Interim Operating Period in order to find a purchaser who will buy the Hospital on a going-concern basis.  But even if the Chapter 7 Trustee determines, in his business judgment, not to pursue a sale of the Hospital on a going concern basis, authorizing the Chapter 7 trustee to operate the Debtors' business for seven days will permit him to effectuate an expedited wind down that, among other things, provides for the safe transfer of the patients to another appropriate facility.

39.     This Court should conclude that permitting the Trustee to operate the Debtors' businesses and granting the related relief sought herein is in the best interests of the Debtors' estates and the Debtors' creditors, including importantly, the Hospital's current patients and other parties in interest.

40.    As set forth above, the Debtors believe that authorizing the Chapter 7 Trustee to operate the Debtors' business during the Interim Operating Period is in the best interests of the Debtors, their estates, creditors and parties in interest, and is consistent with the orderly

liquidation of the estates.  Based upon the foregoing, the Debtors respectfully submit that the Chapter 7 Trustee should be authorized to operate the Debtors' business for seven days, subject to further extension by the Court.

> **B.**   **Payment of the Prepetition Employee Obligations is Necessary and Appropriate Pursuant to Section 105(a) of the Bankruptcy Code and the <u>Doctrine of Necessity</u>**

41.     The Debtors' proposed payment of the Employee Obligations should also be authorized pursuant to section 105(a) of the Bankruptcy Code and the "doctrine of necessity." Section 105(a) of the Bankruptcy Code, which codifies the inherent equitable powers of the bankruptcy court, empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

42.     Courts generally acknowledge that it is appropriate to authorize the payment or other special treatment of prepetition obligations in appropriate circumstances, such as when necessary to preserve the going concern value of a debtor's business and facilitate its reorganization.  <u>See</u>, <u>e.g.</u>, <u>In re Lehigh & New England Ry. Co.</u>, 657 F.2d 570, 581 (3d Cir. 1981) (noting that the "'necessity of payment' doctrine ... permit[s] immediate payment of claims of creditors where those creditors will not supply services or material essential to the conduct of the business until their pre-reorganization claims shall have been paid") (citations and internal quotations omitted); <u>In re Chateaugay Corp.</u>, 80 B.R. 279, 285-87 (S.D.N.Y. 1987) (finding that a court's equitable powers include the authority to authorize a debtor to pay prepetition debts).

43.     In authorizing payments of certain prepetition obligations, courts rely on several legal theories rooted in sections 1107(a), 1108, 363(b), and 105(a) of the Bankruptcy Code.  <u>See</u> <u>Czyzewski v. Jevic Holding Corp.</u>, 137 S. Ct. 973, 985 (2017) (noting that courts have routinely

approved orders that allow payment of prepetition debt, which is necessary for the debtors to maximize the value of the bankruptcy estate); In re Columbia Gas Sys., Inc., 171 B.R. 189, 191-92 (Bankr. D. Del. 1994) (finding that a debtor is entitled to pay certain prepetition creditors upon a showing that the payment is "essential to the continued operation of the business.").

44.     While this the doctrine is most frequently invoked early in a chapter 11 case, the doctrine of necessity is not limited to Chapter 11.  For example, in The Brown Schools, Case No. 05-10841 (MFW), this Court authorized the Chapter 7 trustee to operate the debtors' businesses for a limited period pursuant to 11 U.S.C. § 721, and authorized payment of prepetition wages and benefits of certain employees.  See, e.g., Case No. 05-10841 (MFW) (Bankr. D. Del. April 15, 2005) [D.I. No. 49].

45.     The Debtors believe that payment of the Prepetition Employee Obligations is critical to the ongoing operation of the Debtors' businesses and to patient safety.  In many cases before this Court, debtors legitimately request authority to pay their employees' prepetition wages because of a legitimate fear that, if those obligations are not paid, the debtor will risk tangible and intangible loss of the value of their businesses resulting from low employee morale and high turnover, including needing to replace essential employees who seek alternative employment and because such losses would either cause a disruption to the debtor's or inhibit and lower productivity, or both.

46.     Here, the Debtors fear the same deleterious harm of low morale and high turnover, but because the Employees involved in the healthcare of the patients, the need to maintain are the current Employees, at least through the Interim Operation Period is that much more acute.  Without hyperbole, a massive walkout of the Debtors' employees could be a matter of life and death.

47.     Taken together, the nature of the Employee Obligations, the substantial harm to the Debtors' businesses and the Debtors' existing patients that would be caused if those obligations were not honored, the related potential for loss of value in the Debtors' estates, and the fact that a significant portion of the obligations in question relates either to priority wage claims or to funds held in trust for the benefit of Employees, lead to the conclusion that the Employee Obligations fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

48.     For the foregoing reasons, the Debtors seek entry of an order authorizing, but not directing the Chapter 7 Trustee to make transfers via wire and direct deposits to employees on account of the Prepetition Employee Claims, including employee salaries, deductions, and payroll taxes to the extent such payments do not violate the priority cap in section 507(a)(4) of the Bankruptcy Code, without prejudice to the Chapter 7 trustee's right to seek further relief to seek payment of such other benefits, including health insurance and paid leave, as otherwise provided to the Employees in the Debtors' ordinary course of business.

**C.    The Chapter 7 Trustee should be Authorized (i) to Receive and Apply Money Owing but Not Yet Due from West Suburban Hospital, without prejudice to Rights of the Parties to Assert Additional Claims, and (ii) Borrow Such Other Money on an Unsecured Basis from West Suburban Hospital**

49.     As of the Petition Date, the Debtors had approximately $253,894.93 in their bank accounts, subject to adjustments based upon checks received and checks that have cleared. Given the Debtors' financial position - and again, Westlake Hospital lost an estimated $2.7 million in July - that is woefully insufficient to operate the Hospital for a week, let alone to pay the Employees' Prepetition Obligations.   Among other things, the Debtors' anticipate that operations for the Interim Operation Period will require operating expenses (e.g., pharmacy, office and med supplies, and food), utilities, contract labor, and external medical professionals.

Additionally, the Debtors anticipate that, the United States Trustee will require the retention of a patient care ombudsman.  Further, in the event that the Chapter 7 Trustee does not elect to seek a further extension of the Interim Operation Period, he will need to transport the current patients to another facility, collect and dispose of drugs and other hazardous materials at the Hospital, and to secure and transfer medical records.  The Trustee will also want to receive compensation on account of his work. All of that requires money.

50.    Given the Debtors' precarious financial position, it is unlikely that the Trustee will find, even if he had sufficient time, a lender willing to provide him with the necessary financing.  West Suburban Hospital is willing to provide the Chapter 7 Trustee with funds necessary for the limited operations, as well as for the other items necessary for the wind down of the Hospital.

51.    Section 364(a) of the Bankruptcy Code provides:

[i]f the trustee is authorized to operate the business of the debtor under section 721 . . . of this title, unless the court orders otherwise, the trustee may obtain unsecured credit and incur unsecured debt in the ordinary course of business allowable under section 503(b)(1) of this title as an administrative expense."

11 U.S.C. § 364(a). Further, Section 364(c) of the Bankruptcy Code provides that if the trustee is unable to obtain unsecured credit allowable as an administrative expense under Section 503(b)(1) of the Bankruptcy Code, then the Court, after notice and a hearing, may authorize the trustee to obtain credit or incur debt on, inter alia, the following bases:

(1)    with priority over any or all administrative expenses of the kind specified in section 503(b) or 507(b) of this title;
(2)    secured by a lien on property of the estate that is not otherwise subject to a lien; or
(3)    secured by a junior lien on property of the estate that is subject to a lien.

11 U.S.C. § 364(c).

52.     Expressly subject to the Chapter 7 trustee's agreement to use the funds for operation of the Hospital,[7] West Suburban Hospital is willing to provide the Chapter 7 Trustee up to $1,936,884.00 (the "<u>West Suburban Transfer</u>") for the payment of the continued operation of the Hospital.

53.     The amount of the West Suburban Transfer was calculated to pay certain operational and/or wind down expenses for the Hospital, including as follows:

| Category | Amount |
|---|---|
| Prepetition Employee Claims (9 days), including salary, related payroll taxes, and withholding, including 401(k) contributions | $731,250.00 |
| Postpetition employee claims (7 days) including salary, related payroll taxes, and withholding, including 401(k) contributions | $568,750.00 |
| Hospital operating expenses (e.g., pharmacy, office and med supplies, and food) | $101,000.00 |
| Cost of transport of patients[8] | $25,000.00 |
| Utilities | $192,832.00 |
| Contract labor (7 days) | $22,000.00 |
| Collection/disposal of drugs and other hazardous materials | $27,096.00 |
| Transfer/disposal of medical records | $50,000.00 |
| External medical professionals | $77,956.00 |

[7]     The West Suburban Transfer is expressly subject to Chapter 7 Trustee's agreement to operate the Hospital through the Interim Operating Period and to use the money received from West Suburban Hospital to pay the Prepetition Employee Claims.  For example, if the Chapter 7 Trustee elects not to remit payment for the Prepetition Employee Claims, the West Suburban Transfer would not be included in the West Suburban Transfer.  Further, the amount of the calculation of the Chapter 7 Trustee fees would be revised to reflect that such payments are not being made.  In such case, West Suburban Hospital would transfer such amounts due to the Debtors' estates in the ordinary course of business.

[8]     The Debtors' have cost of transportation to be $500 per patient, which is a very conservative estimate.  As of the Petition Date, the Hospital has forty (40) patients admitted for inpatient care.  Accordingly, the estimated amount for transportation should total $20,000.  SRC has provided an additional $5,000 to its estimate in case of any admittances during the Interim Operating Period who require transportation to another facility

| Security for 14 days after Interim Operating Period | $15,000.00 |
| Patient care ombudsman[9] | $50,000.00 |
| Trustee fees calculated pursuant to Section 326 of the Bankruptcy Code | $79,000.00 |
| **TOTAL** | $1,936,884.00 |

54.    To be clear:  the payment of any amounts beyond the owed to Hospital by West Suburban Hospital is not a legal or fiduciary obligation.  Rather SRC, together with West Suburban Hospital and Weiss Hospital, have determined in their individual and collective business judgment that, as a matter of policy, it is best for the Debtors' estates and its creditors, including the Employees, for the community, and most importantly for the Hospital's patients to provide funding for the Chapter 7 Trustee to enable him to either seek to continue operating to find a purchaser on a going concern basis, or to wind down in an expedient, but safe manner, and for the collection and disposal of drugs and other hazardous materials.  This amount includes the cost of normal Hospital operating expenses, including salaries for employees, the cost of the pharmacy, and office and medical supplies, and food for patients, utilities, and contract labor.

55.    Additionally, in considering the costs which may be necessary for the administration of the Hospital, West Suburban Transfer also includes money to pay a patient care ombudsman pursuant to Section 333 of the Bankruptcy Code, and for the transfer of the Hospital's current to an appropriate facility and for the transfer and disposal of medical records, as determined necessary by the Chapter 7 Trustee after consultation with the patient care ombudsman.[10]

---

[9]        Solely for the purposes of illustration, in the pending bankruptcy cases of Hospital Acquisition LLC, et al. (Case No. 19-10998), the line item of expenses provides $100,000 for the patient care ombudsman.  Those debtors have sixteen (16) facilities.
[10]      Obviously, any decision as to the care of a specific patient would also be product of discussions by the medical team, and subject to the consent of the patient.

56.     Whether or not the Chapter 7 Trustee makes a determination not to operate the Hospital after the Interim Operating Period, there will be a need for security for at least some limited duration of time.  Accordingly, the West Suburban Transfer includes $15,000 for security at the Hospital for up to two weeks after the conclusion of the Interim Operating Period.

57.     Finally, the West Suburban Transfer also includes funds for the Chapter 7 Trustee fees, as calculated by Section 326 of the Bankruptcy Code. If the Chapter 7 Trustee determines, in his business judgment, not to operate the Hospital or not to remit payment on account of the Prepetition Employee claims, the amount to which the Chapter 7 Trustee will be entitled pursuant to Section 326 of the Bankruptcy Code will be reduced, and accordingly, the amount of the West Suburban Transfer would also be reduced in a identical amount.

58.     Prior to the Petition Date, West Suburban Hospital was obligated to the Westlake Opco in the amount of approximately $850,000, subject to further claims and rights to setoff. Such obligations were due but not yet owing.  West Suburban Hospital is willing to provide the West Suburban Transfer for the Chapter 7 Trustee to operate the Debtors' Business, and for the other purposes set forth herein necessary for the administration of the estate, such as $50,000 for the patient care ombudsman, and for collection and disposal of drugs and hazardous waste at the Hospital, in order to first satisfy the approximately $850,000 owed by West Suburban Hospital to the Hospital, without prejudice to the Chapter 7 Trustee or by West Suburban Hospital to assert other amounts due to the Debtors.

59.     The balance of approximately $1,086,884.00 will be an postpetition obligation of the estate, which to be treated as a superpriority administrative claim pursuant to Section 364(c)(1) and 503(b) of the Bankruptcy Code.

60.     Given the limited options for financing, including the Debtors' unencumbered assets, the Debtors' respectfully submit that permitting rhe Chapter 7 Trustee to receive the West Suburban Transfer for the use of paying for the limited operation of the Debtors' business, on the terms set forth herein are in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

**D.     Request for Further Hearing for Final Order and to Extend the Chapter 7 Trustee's Authority to Operate the Debtors' Businesses in Whole or in Part Beyond the Interim Operating Period.**

61.     While the Interim Operating Period runs through and including August 13, 2019, the relief sought herein is without prejudice to the Chapter 7 Trustee's right to seek to extend, in whole or part, in his business judgment.  Without seeking to require the Chapter 7 Trustee to take any action, the Debtors seek to schedule a further hearing to consider granting the relief herein on a final basis, and for a further extension the Chapter 7 Trustee's right to operate the Debtors' businesses beyond the Interim Operating Period, if the Chapter 7 Trustee makes such a determination in his business judgment.

62.     To that end, the Debtors respectfully request that a hearing be set prior to the expiration of the Interim Operating Period to consider such relief.  Because the relief would set a hearing in less than seven days, the Debtors request, pursuant to Local Rule 9006-1(c)(2),[11] to set an objection deadline at noon one day prior to the hearing.  The Debtors respectfully submit that timing balances the need for expediency while providing creditors and other parties in interest as

---

[11]     Local Rule 9006-1, titled "Objection Deadlines," provides in relevant part as follows:  "Where a motion is filed and served in accordance with Local Rule 9006-1(c)(i), the deadline for objection(s) shall be no later than seven (7) days before the hearing date.  To the extent a motion is filed and served in accordance with Local Rule 2002-1(b) at least twenty-one (21) days prior to the hearing date, however, the movant may establish any objection deadline that is no earlier than fourteen (14) days after the date of service and no later than seven (7) days before the hearing date.  Any objection deadline may be extended by agreement of the movant; provided, however, that no objection deadline may extend beyond the deadline for filing the agenda.  In all instances, any objection must be filed on or before the applicable objection deadline. . . . "

much time as possible to provide a reply, and at the same time permitting the Court as much time as is reasonably practicable to review responsive pleadings, if there are any.

## THE REQUESTED RELIEF SATISFIES BANKRUPTCY RULE 6003

63.     Bankruptcy Rule 6003 of the Federal Rules of Bankruptcy Procedure provides

64.     "[e]xcept to the extent that relief is necessary to avoid immediate and irreparable harm, the court shall not, within 21 days after the filing of the petition, grant relief regarding . . . a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition . . ."

Fed. R. Bankr. P. 6003(b).

65.     This case involves the importance of health and safety of the patients in the Hospital.  Without granting immediate relief, the Chapter 7 Trustee could not effectively operate the Debtors' businesses.

66.     The Debtors submit that, because the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors' business and their patients, Bankruptcy Rule 6003 has been satisfied and the relief requested herein should be granted.

## REQUEST FOR WAIVER OF BANKRUPTCY RULES 6004(a) AND (h)

67.     To implement the foregoing immediately, the Debtors respectfully request a waiver of the notice requirements under Bankruptcy Rule 6004(a).  Furthermore, to implement the foregoing immediately, the Debtors seek a waiver of any stay of the effectiveness of the order approving this Motion.  Pursuant to Bankruptcy Rule 6004(h), any "order authorizing the

use, sale, or lease of property other than cash collateral is stayed until the expiration of fourteen (14) days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h).

68.     As set forth above, the immediate payment of any amounts owing to or on account of Employees is essential to prevent potentially irreparable damage to the Debtors' operations, including the Hospital's current patients' health.  Accordingly, the Debtors submit that ample cause exists to justify a waiver of the 14-day stay imposed by Bankruptcy Rule 6004(h).

## NOTICE

69.     Notice of this Motion to Operate, has been served by first class mail and/or first class mail, and by electronic mail to the extent a contact information is known to: (i) the Chapter 7 Trustee, once appointed; (ii) counsel for the Debtors' twenty largest unsecured creditors; (iii) VHS Of Illinois, Inc.; (iv) counsel to VHS of Illinois, Inc.; (v) Cortland Products Corp. (vi) Centers for Medicare and Medicaid Services, Office of the Regional Administrator; (vii) State's Attorney of Cook County; (viii) Illinois Health Facilities and Services Review Board; (ix) Illinois Department of Public Health, Central Office Operations; (x) National Government Services, Inc.; (xi) the Village of Melrose Park, IL; (xii) counsel to the Village of Melrose Park; (xiii) the Office of the United States Trustee; and (xiv) all parties who have requested notices pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Debtors submits that no further notice need be given.

WHEREFORE, the Debtors respectfully request entry of an Order, a copy of which will be presented prior to or at the hearing to consider the Motion: (i) authorizing the Trustee to continue the limited operation of the Debtors' businesses pursuant to 11 U.S.C. §§ 363 and 721 through and including August 13, 2019; (ii) authorizing the Chapter 7 Trustee pay the Prepetition

Employee Obligations pursuant to Sections 105 and 507(a) of the Bankruptcy Code; (iii) authorizing the Chapter 7 Trustee and West Suburban Hospital, Weiss Hospital, and/or SRC to setoff prepetition and postpetition claims, without prejudice to the parties to asset such other or further claims; (iv) authorizing the Chapter 7 trustee to take such action as reasonable and necessary to effectuate the relief herein; (v) scheduling a further hearing and objection deadline to consider an extension of  Interim Operating Period; and (vi) granting such other and further relief as is just and proper.

Dated: August 6, 2019                    **MORRIS JAMES LLP**

*/s/ Jeffrey R. Waxman*
Jeffrey R. Waxman (DE Bar No. 4159)
Eric J. Monzo (DE Bar No. 5214)
Brya M. Keilson (DE Bar No. 4643)
500 Delaware Ave., Suite 1500
Wilmington, DE 19801
Telephone: (302) 888-6800
E-mail:  jwaxman@morrisjames.com
E-mail:  emonzo@morrisjames.com
E-mail:  bkeilson@morrisjames.com

*Counsel for Debtors*