## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| WESTLAKE PROPERTY HOLDINGS, LLC, | : | Case No. 19-11756 (KBO) |
| Debtor. | : | |
| In re: | : | Chapter 7 |
| PIPELINE – WESTLAKE HOSPITAL, LLC d/b/a DBA WESTLAKE HOSPITAL, | : | Case No. 19-11757 (KBO) |
| Debtor. | : | |

### DECLARATION OF JAMES EDWARDS IN SUPPORT OF FIRST DAY RELIEF

I, James Edwards, hereby declare the following, under penalty of perjury:

1. I am an authorized signatory regarding the above-captioned bankruptcy cases. I am Chief Executive Officer and member of SRC Hospital Investments II, LLC which is a sole member and manager of debtor Pipeline – Westlake Hospital, LLC ("Westlake Opco") and a member of debtor Westlake Property Holdings, LLC ("Westlake Propco," and collectively with Westlake Opco, the "Debtors"). Except as otherwise indicated, all facts set forth in this declaration are based upon my personal information, and my discussions with members of the Debtors' management teams and advisors, my review of relevant documents and information concerning the Debtors' businesses and financial affairs. I am authorized to submit this declaration on behalf of the Debtors and, if called as a witness, I would testify competently to the facts set forth in this declaration.

2. I am generally familiar with the Debtors' day-to-day operations, business and financial affairs, and books and records. I submit this declaration to assist the Court and the

parties-in-interest in understanding the circumstances that led to the commencement of these Chapter 7 cases and in support of the Debtors' petition for relief under title 11 of the United States Code filed on the date hereof (the "Petition Date") and the relief that the Debtors have requested from the Court pursuant to the motions and applications described herein.

3. The Debtors' business both relate to Westlake Hospital, a healthcare facility located in Melrose Park, Illinois (the "Hospital"). Specifically, Westlake Propco is the owner of the real property and equipment for the Hospital, and Westlake Opco is the operating company. Westlake Propco and Westlake Opco are both Delaware limited liability companies.

4. The Hospital is a 230 bed facility that, among other things, provides a variety of medical services, including emergency services, behavioral health, cardiac care, imaging and radiology, pulmonology, critical care, surgery, and obstetrics/gynecology.

5. On December 31, 2018, SRC Hospital Investments II, LLC ("SRC") entered into an agreement to purchase the Hospital and two other hospitals in the greater Chicago metropolitan area, Louis A. Weiss Memorial Hospital ("Weiss Hospital") and West Suburban Medical Center ("West Suburban Hospital"). The transaction closed on January 28, 2019. An organizational chart for SRC, a Delaware limited liability company and the parent company of the Debtors and the related entities pertaining to Weiss Hospital and West Suburban Hospital, is attached hereto as **Exhibit A**. In connection with the sale, VHS of Illinois, Inc., received a security interest in Westlake Propco's real estate and equipment. Notably, the seller did not not have a security interest in the Debtors' accounts receivable or bank accounts, both of which are unencumbered by any security interest.

6. Prior to the purchase of the three hospitals, SRC had evaluated the financials of the Hospital's income and expenses based upon the twelve-month period ending June 2018. As a

general proposition, the financial state of hospitals are in significant disarray that continues to negatively affect the economic feasibility of both large and small hospitals. The Affordable Care Act, Illinois' introduction of Medicaid managed care and advances in medicine have changed how and where healthcare is provided. It has also changed the economics and incentivized keeping patients out of hospitals. In the particular case of Westlake Hospital, its finances were dealt a second and third blow by recent changes at the state and local levels. In 2018, the Illinois state legislature made changes to the Illinois Health Assessment Payments & Charity Care Tax Credit Program (the "Hospital Assessment Program") and as a result, Westlake lost approximately $4 million in annual state funding. of approximately $4 million in annual state funding. To make matters worse, in December 2018, the Village of Melrose Park (the "Village") voted unanimously in a special meeting to withdraw $500,000 of support for the Hospital's redevelopment plan.

7. During the twelve-month period ending June 2018, the three hospitals had lost a total of approximately $12 million. The majority of those losses came from Westlake Hospital. By the end of the year, that loss had increased to approximately $31 million across all three hospitals, with the overwhelming majority of that loss coming from Westlake.

8. By February 2019, the Hospital's financials turned from bad to worse. In February 2019, less than half of the Hospital's beds were occupied, and the Hospital was losing more than $1 million a month. Meanwhile, the staffing at the hospital suffered significant attrition, to the point where the Hospital no longer felt comfortable that it could continue to provide the level of care necessary for patient safety. In addition to the issue of ensuring safe levels of care, the continued losses by Westlake also imperiled the survival of Weiss Hospital and West Suburban Hospital.

A.  **Request to Discontinue Services and Subsequent Litigation**

9. On February 21, 2019, the Hospital filed a discontinuation certificate of exemption application (the "Discontinuation Application") which sought the approval of the Illinois Health Facilities and Services Review Board (the "Illinois Board") to permit the closing of the Hospital. Within a few days of the submission of the Discontinuation Application, the Board deemed it complete and scheduled it for the Illinois Board's April 30, 2019 meeting.

10. On March 7, 2019, while the Discontinuation Application was pending for a hearing, the Village filed a Complaint in the Circuit Court of Cook County, Illinois (Case No. 19-CH 03041) against Westlake Opco, SRC, and other parties asserting a variety of claims based on allegations of fraud arising from the Illinois Board's approval of Westlake Opco's certification submitted in connection with the sale and transfer of the Hospital.

11. Between February and April 2019, approximately 45 staff members resigned from their positions at the Hospital. As a result, the Hospital was required to rely upon temporary staffing, rather than the Hospital's own staff. Meanwhile, the Hospital continued to lose more money each month. In April 2019, the Hospital lost approximately $2.3 million, as less than thirty percent (30%) of the Hospital's beds were filled.

12. On the morning of April 9, 2019, the Hospital provided a notice to its employees pursuant to the Workers Adjustment and Retraining Notification Act of 1988 (the WARN Act). Pursuant to the terms of the WARN Act, such notice is effective through August 21, 2019.

13. In the afternoon of April 9, 2019, the Cook County Circuit Court (in Case No. 19-CH 03041) entered an Order temporarily enjoining the Hospital from discontinuing any medical service offered by Hospital on April 9, 2019, or modifying the scope of medical service that were

offered by Westlake Hospital on April 9, 2019, until such time as Defendants receive approval to do so from the Illinois Board.

14. On April 18, 2019, the Appellate Court of Illinois, First District, concluded that the circuit court erred by entering a temporary restraining order where the plaintiff, the Village, lacked standing and promptly reversed that order and remanded to the Circuit Court for further proceedings. The Village's petition for leave to appeal the Illinois Appellate Court's decision is currently pending before the Illinois Supreme Court. The Illinois Appellate Court promptly reversed that order, and the Village's petition for leave to appeal the Illinois Appellate Court's decision is currently pending before the Illinois Supreme Court.

15. On April 30, 2019, the Illinois Board conducted its hearing to consider the Discontinuation Application, considered the application on its merits, and unanimously approved the Discontinuation Application.

16. On May 2, 2019, the Village filed a second lawsuit which appeal to the Illinois Board's decision in the Circuit Court of Cook County, Illinois County Department – Chancery Division against Westlake Opco, SRC, and the Illinois Board (Case No. 19-CH-05553), by and through which it again sought injunctive relief to prevent the Hospital from closing. This action was subsequently joined by the Illinois State Attorney of Cook County. On May 3, 2019, the Circuit Court of Cook County entered a temporary restraining order that precluded the Hospital from closing pending a further hearing on May 7, 2019. On May 7, 2019, notwithstanding the Illinois Board's unanimous approval of the Discontinuation Application, the Circuit Court entered an opinion and order that, among other things, precluded the defendants from discontinuing any medical service offered by Westlake Hospital on April 30, 2019 or modifying the scope of those services, or creating conditions that would change the status quo, including failing to maintain

facilities staffing or supply levels. Westlake Opco and SRC timely filed their Notice of Interlocutory Appeal one day later on May 8, 2019, as subsequently amended, which remains pending in the Appellate Court of Illinois, First District at Case No. 1-19-0989.

17. Meanwhile, the financial losses at Westlake continued to become more significant, and the prospect of remaining open grew more dire. In May 2019, the Hospital lost approximately $2.5 million. In July 2019, the Hospital had less than 20% of its beds occupied at any given time, and the Debtors anticipate that the Hospital may have lost as much as almost $2.7 million during the month of July.

18. As of August 1, 2019, the Hospital had just forty (40) patients, fourteen of whom were seeking behavioral health services, with the remaining patients seeking medical or surgical services. All of these patients could be safely transferred to another facility, including any of the three medical facilities within four miles of the Hospital.[1]

19. As a matter of economics, the Hospital was nearly empty with a staff that could not be downsized due to the injunctive order of the state court. Further, the Hospital had attempted to find a purchaser who would buy the Hospital as a going-concern. The Debtors were contacted by a number of parties who said that they were interested in potentially acquiring the Hospital, however on August 1, 2019, the Debtors were informed by the last of the interested parties that he could not pursue the transaction because of a lack of financing.

20. Accordingly, the Debtors had no choice but to seek Chapter 7 bankruptcy relief. Absent such relief, the Debtors would be required to stay open, but financially unable to pay their

---

[1] These three medical facilities are (i), Loyola University Medical Center, a quaternary care facility with 547 licensed beds, and which with a Level I trauma center, located in Maywood, IL; (ii) Gottlieb Memorial Hospital, a 254-licensed bed acute care hospital with a Level II trauma center located in Melrose Park, IL; and (iii) West Suburban Medical Center, a full-service, 234-bed hospital in Oak Park, IL.

obligations to their creditors, including their employees. The Hospital believed that, under such conditions, it would only be a matter of time until patient safety was compromised to the point of injury (or worse) to one of the Hospital's patients.

### B. The Debtors' Operations and Employees

21. As of August 2, 2019, the Debtors employed approximately 550 employees (the "Employees"),[2] not including contracted labor who provide services in shifts. The employees include administrative staff, medical records and health information management, security, transportation services, plant operation and maintenance workers, physical and operational therapists, respiratory therapists, behavioral and psychiatric service providers, pharmacists, laboratory technicians, radiology and electrocardiology technicians and of course, the nursing staff.

22. The Hospital's nurses can best be fit into one of the following categories: (i) staff nurses, who are full-time employees of the Hospital, and who are familiar with the Hospital, its medical staff, its procedures, and its electronic medical records system, (ii) per diem nurses, who have no right or obligation to work for the Hospital, but who are included as employees and may do shift work for the Hospital at the parties' mutual convenience and need, and (iii) contracted agency staff who are employed on a shift-by-shift basis through an outside agency. As a general matter, because of their lack of familiarity with the Hospital and its practices and procedure, contracted agency staff require a higher level of supervision than either the staff nurses or the per diem nurses, particularly because the Hospital does not necessarily know the contracted agency staff nurses' level of competency, particularly with respect to those services for which they may

---

[2] All of the Employees are employed by Westlake Hospital. Further, some of the Employees are also employees shared by the Hospital with either West Suburban Hospital or Weiss Memorial Hospital, and those Employees who work for multiple entities are paid either in whole or in part by the Hospital, or by the other hospital for which the Employee works.

be placed for a particular shift. Unfortunately, based upon the attrition of staff nurses and the inability of the Hospital to attract new, qualified nurses to take their place, the Hospital is now staffed with a significant number of contract nurses.

23. As noted above, on the morning of April 9, 2019, the Hospital issued WARN notices to each of its employees. That notice remains effective through August 21, 2019.

24. The Employees were last paid on August 2, 2019. The current pay period for the Employees runs from July 28 through August 10, 2019, which is due to be paid on August 16, 2019.[3] Accordingly, as of the Petition Date, the Debtors are obligated to remit payment on account of nine (9) days of prepetition wages and related expenses, including payroll taxes, and withholding contributions (the "Prepetition Employee Obligations"),[4] totaling approximately $731,250 on August 10, 2019.

### C.    Operations of the Hospital and Intercompany Obligations

25. West Suburban Hospital, Weiss Hospital, and Westlake Hospital share certain costs and obligations, including obligations to doctors and staff who serve at two or more of the hospitals. As a matter of ordinary course of business of the three hospitals, West Suburban Hospital would receive services provided by the employees of Westlake Hospital, and the hospitals would maintain records of obligations among themselves.

26. Prior to the Petition Date, West Suburban Hospital was obligated to Westlake Opco in the amount of approximately $850,000 for obligations incurred in the ordinary course of the parties, including among other things, shared personnel. The obligations from West Suburban

---

[3] Such amounts would need to be funded through Automatic Data Processing (ADP) by August 13, 2019, in order to timely remit payment to the Employees.

[4] The Debtors are not, by the Motion to Operate (filed contemporaneously herewith), seeking to authorize the payment of paid time off, or other benefits owed to Employees. The failure to include such amounts is without prejudice to the Chapter 7 Trustee's right to subsequently seek such relief.

Hospital are not yet due to be paid, and remain subject to certain offsets among the parties in the ordinary course of business.

27. The Debtors do not believe that, as of the Petition Date, any money was owed by Weiss Hospital to the Debtors, but the Debtors owe Weiss Hospital approximately $6.1 million. The Debtors do not believe that the Debtors had any financial obligation to West Suburban Hospital. These obligations among Westlake Opco, Weiss Hospital, and West Suburba Hospital may have changed in the last few days immediately prior to the filing of the Bankruptcy Petitions depending upon money that may have been received or services that may have been provided.

28. Notwithstanding Westlake Hospital's financial distress, the Hospital has insurance coverage through January 25, 2020,[5] including coverage for Professional and General Liability, Workers' Compensation, Automobile, and Property.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: August 6, 2019

/s/ James Edwards
James Edwards

---

[5] Although the policies are in place through January 2020, such policies remain subject to payment for insurance premium financing.